This is an appeal from a summary judgment entered against the plaintiffs, Dorothy and Hiram Bailey, in an action against Bruno's, Inc. ("Bruno's").
At approximately 7:45 p.m., on February 14, 1987, Dorothy Bailey was leaving the Food World supermarket in Selma after purchasing groceries. She was accompanied by her two young granddaughters. Bailey reached her automobile and was unlocking the door when she was assaulted by a man armed with a pistol. The man demanded her purse, and when she refused he began to hit her on the head with the barrel of his pistol. She fell to her knees, momentarily losing consciousness, and the man fled with her purse. Bailey was then carried into the supermarket by some Food World employees. Paramedics were summoned, and she was transported to the Selma Medical Center.
On December 9, 1987, Bailey and her husband filed a complaint against Bruno's, the corporation that owns the Food World supermarket in Selma. The Baileys' complaint alleged that, prior to the assault on Ms. Bailey, there had been "[r]epeated incidents of criminal activity in the parking lot" of the Food World supermarket in Selma, and that Bruno's had a duty to either protect its patrons or provide adequate warnings of any potential risk of harm to its patrons. The Baileys alleged that Bruno's had negligently or wantonly failed to provide such protection or warnings and that as a proximate result of that *Page 510 
failure Ms. Bailey had been assaulted and injured. Mr. Bailey claimed damages for the loss of his wife's companionship, consortium, and services.
Although this Court has recognized that a duty may be imposed on a business owner to take reasonable precautions to protect invitees from criminal attack, that duty has been imposed only when the business owner possessed actual or constructive knowledge that criminal activity that could endanger an invitee was a probability. Williams v. First Alabama Bank,545 So.2d 26, 27 (Ala. 1989); Nail v. Jefferson County Truck GrowersAss'n, Inc., 542 So.2d 1208, 1212 (Ala. 1988); Childers v.Winn-Dixie Stores, Inc., 514 So.2d 879, 880 (Ala. 1987); Moyev. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1371 (Ala. 1986);Law v. Omelette Shop, Inc., 481 So.2d 370, 371 (Ala. 1985);Ortell v. Spencer Companies, Inc., 477 So.2d 299 (Ala. 1985);Henley v. Pizitz Realty Co., 456 So.2d 272, 277 (Ala. 1984). The requirement that the business owner possess such knowledge is based on this Court's reluctance to impose liability on one party for an intentional criminal act committed by another party. CIE Service Corp. v. Smith, 460 So.2d 1244, 1247 (Ala. 1984).
A recent decision imposing a duty to protect an invitee wasNail v. Jefferson County Truck Growers Ass'n, Inc.,542 So.2d 1208 (Ala. 1989). In Nail, two competing produce retailers at a farmer's market had been feuding over one retailer's refusal to vacate his leased space. The operators of the market were aware of the growing hostility between the retailers and had hired an extra security guard to patrol the area occupied by those retailers. Nail, supra, at 1212-13. The security guard became ill and left work and was not replaced by another guard by the market operators, contrary to the market's usual procedure. On that date a shoot-out occurred, and one of the retailers and a market employee were injured. Nail, supra, at 1210. This Court held that the plaintiffs in Nail produced sufficient evidence that the market operators knew, or should have known, that there was a probability of conduct by third persons that would endanger the plaintiffs. Nail, supra, at 1212. That knowledge was evidenced by the fact that the operators knew that feuding was occurring, knew who the participants were, knew why the hostility was mounting, and had been warned on more than one occasion of the possibility of violence. In addition, this Court found that the market operators, by hiring an extra security guard, had assumed a duty to exercise reasonable care to protect their invitees from the specific act of violence that occurred. Nail, supra, at 1212.
In the instant case, the evidence showed an increase in the amount of criminal activity in the area around the Food World supermarket. There was also evidence that the manager of the supermarket had been negotiating with off-duty Selma police officers for the purpose of getting them to work as security guards. In addition, there was evidence indicating that there had been an increase in the amount of shoplifting in the store. The plaintiffs also submitted a number of incident reports filled out by officers of the Selma Police Department. Those reports show that the following instances occurred either at the supermarket, in its parking lot, or in the parking lot of the adjacent Big B drugstore in the period between May 1985 and February 1987, when Dorothy Bailey was assaulted:
1. (5) Robbery;
2. (1) Shoplifting;
3. (1) Assault; and
4. (1) Kidnapping, rape.
This Court has held that a large volume of crime in the area surrounding a business owner's premises, or on the premises themselves, does not, by itself, impose a duty on a business owner to provide protection against criminal attack. Law,supra, 481 So.2d at 372; Ortell, supra, 477 So.2d at 300. InOrtell, a female customer was assaulted by an armed robber after she entered a convenience store during a robbery. The plaintiff sued the storeowner for damages based on its failure to protect her from that attack. Evidence showed that during the three-year period preceding *Page 511 
the assault, eight incidents of assault, theft, robbery, or burglary had occurred on the premises. Furthermore, during the same period, over 80 separate criminal incidents had occurred within a two-block area surrounding the store. This Court held that these occurrences did not, alone, impose a duty on the storeowner to protect the plaintiff from attack. Ortell, supra, at 300.
Bailey also argues that the fact that the manager of Food World had negotiated with off-duty Selma police officers in an attempt to secure their services as security guards indicates that Bruno's had knowledge of the risk of criminal attack. This Court has repeatedly rejected the argument that the presence of security guards or security systems gives rise to an inference that the business owners foresaw the possibility of criminal activity on the part of third persons. Moye, supra, 499 So.2d at 1373; Henley, supra, 456 So.2d at 27677; Latham v. AronovRealty Co., 435 So.2d 209, 211-13 (Ala. 1983). We therefore cannot logically permit mere negotiations for security guards to give rise to that inference.
In Henley supra, this Court held that a determination as to the existence of a duty to protect hinges on the foreseeability of the particular criminal conduct that harmed the plaintiff.Henley, supra, 456 So.2d at 277. In Henley, this Court quoted the Tennessee Supreme Court, with approval:
 " 'In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers, generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or [are] about to occur on the premises that pose imminent probability of harm to an invitee;
whereupon a duty of reasonable care to protect against such act arises.' "
Henley, supra, at 276-77 (quoting Cornpropst v. Sloan,528 S.W.2d 188 (Tenn. 1975)).
The police records submitted to the trial court revealed only seven incidences of violence or threats of violence in the 21-month period preceding the assault on Ms. Bailey. It should be noted that that earlier assault occurred inside the store, not in the parking lot. The volume of crime indicated by the reports and other evidence does not approach the volume present in Ortell, supra, where this Court found no duty. In addition, the evidence presented to the trial court did not indicate that the defendant had reason to know that acts were occurring or were about to occur on the premises that posed an imminentprobability of harm to Dorothy Bailey or any other invitee. Unlike the defendants in Nail, supra, Bruno's did not have the sort of specialized knowledge that gives rise to a duty to protect. Therefore, the trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.